IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Metaldyne Powertrain Components, Inc., | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 2:21-cv-3588-BHH |
| v. | ) ) | **Opinion and Order** |
| Sansera Engineering Limited, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

In this business dispute, Plaintiff Metaldyne Powertrain Components, Inc. ("Metaldyne") has sued Defendant Sansera Engineering Limited ("Defendant" or "Sansera") about an allegedly defective motorcycle component purchased by Metaldyne from Sansera. Metaldyne, a supplier of motorcycle transmission gearbox assemblies, contracted with Sansera, an integrated manufacturer of complex and high-quality precision components for the automotive sector, to manufacture and supply Metaldyne with shift forks for inclusion in Metaldyne's assemblies. Metaldyne, in turn, contracted with Bayerische Motorer Werke Aktiengesellschaft, also known as BMW AG ("BMW"), to supply its assemblies for certain BMW motorcycles. According to the complaint, certain of the shift forks Sansera supplied to Metaldyne for inclusion in its assemblies had defective, non-conforming shift fork pins.

Jurisdiction is founded on diversity, pursuant to 28 U.S.C. § 1332. The complaint contains the following six counts: (1) breach of contract; (2) breach of express warranties; (3) breach of implied warranty of merchantability; (4) breach of implied warranty of fitness for particular purpose; (5) contractual indemnification; and (6) alternatively, equitable

indemnification. (ECF No. 1.) Metaldyne seeks actual and consequential damages as to all claims to be determined at trial, as well as attorneys' fees and costs. (*Id.*) Metaldyne also specifically seeks to recover from Sansera the amount it paid to BMW to settle BMW's claims against it related to costs BMW incurred flowing from the nonconforming shift fork pins. Attached to the complaint is a copy of the written contract between the parties.[1] (ECF No. 1-1.)

Now before the Court is Sansera's motion for summary judgment pursuant to Fed. R. Civ. P. 56. (ECF No. 43.) Metaldyne filed a response in opposition. (ECF No. 48.) Sansera filed a reply. (ECF No. 49.) After review, the Court finds that no hearing is necessary to resolve the motion. For the reasons that follow, the Court grants the motion in part and denies the motion in part.

## I.    Background

Metaldyne was a supplier of motorcycle transmission gearbox assemblies for certain BMW motorcycles. Metaldyne entered into a written Contract with Sansera, pursuant to which Sansera agreed to supply Metaldyne with shift forks, which would be incorporated into Metaldyne's assemblies.

BMW learned of rear-wheel-locking incidents with its K1600 motorcycle, which led it to issue recalls and to conduct investigations related to the nonconforming shift forks in the transmissions of this motorcycle. (*Id.* ¶ 37.) This motorcycle incorporated a transmission known as the K48, which was supplied to BMW by Metaldyne. (*Id.* ¶ 28.) As

---

[1] Plaintiff is formerly known as Gear Design and Manufacturing, LLC ("GDM"). (ECF No. 1.) After this case was filed, GDM merged into Metaldyne. (ECF No. 48 at 1 n.1.) GDM purchased certain assets and contracts from TorqTek Design and Manufacturing, LLC, which included the contract at issue in this case. (*Id.*) GDM kept TorqTek's terms and incorporated them into its purchase order and scheduling agreement with Sansera. (*Id.*) Thus, the contract is comprised of a purchase order, a scheduling agreement, and the incorporated TorqTek general terms and conditions (hereinafter, "Terms") (collectively, the "Contract"). (ECF No. 1 at 4; ECF No. 1-1.)

a result, BMW asserted a claim against Metaldyne for costs and damages BMW incurred related to the non-conforming shift forks. (*Id.* ¶ 38.) "BMW and Metaldyne participated in months of negotiations," which ultimately led to a signed settlement agreement on December 8, 2020. (ECF No. 48 at 13-14. *See also id.* ("[B]etween July and September 2020, BMW and Metaldyne negotiated and exchanged various commercial offers of settlement regarding the recall and global warranty and field service action costs associated with Sansera's non-conforming shift fork assemblies.").) In addition to seeking actual and consequential damages as to its claims, Metaldyne seeks indemnification from Sansera "for the costs and amounts it was obligated to pay BMW." (ECF No. 1. ¶¶ 40, 73-74. *See also* ECF No. 48 at 18 ("Metaldyne seeks recovery of the amounts paid to BMW for the recall and global field service actions undertaken by BMW to remedy the nonconforming shift fork assemblies.").)

## II.    Legal Standard

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) of the Federal Rules of Civil Procedure requires that the district court enter judgment against a party who, "'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 190 (4th Cir. 1997) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. at 249. When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, it may discharge its burden by demonstrating to the court that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. The non-movant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.

Any reasonable inferences are to be drawn in favor of the nonmoving party. *Anderson*, 477 U.S. at 255; *Webster v. U.S. Dep't of Agric*., 685 F.3d 411, 421 (4th Cir. 2012). However, to defeat summary judgment, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence. *See Anderson*, 477 U.S. at 252; *Stone*, 105 F.3d at 191. Rather, "a party opposing a properly supported motion for summary judgment . . . must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e) (2002) (amended 2010)). If the adverse party fails to provide

evidence establishing that the fact finder could reasonably decide in his favor, then summary judgment shall be entered "regardless of '[a]ny proof or evidentiary requirements imposed by the substantive law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

## III. Discussion

There is no dispute that an enforceable contract between Metaldyne and Sansera was formed. (ECF No. 1-1.) Rather, the meaning and applicability of two provisions under the Terms is at issue: Section 9 and Section 14.

Section 9 is titled "Product Liability," and it states in relevant part that:

> Seller shall indemnify and defend Buyer against third-party claims asserted against Buyer or its customers for bodily injury, death, or property damage and any resulting damages, losses, costs, and expenses (including reasonable attorney's fees), if and to the extent caused by Seller's design or manufacture of Products or provision of Services. The parties will cooperate with each other to determine the root cause of a defect in or failure of the Products and an equitable allocation of responsibility among all responsible parties. Seller may examine and test all available Products that are subject to a third-party claim. Buyer will endeavor to include Seller in settlement discussions where indemnity has been or will be sought from Seller, and Buyer may not settle or compromise any third-party claim that gives rise to an indemnification claim without Seller's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed.

(ECF No. 1-1 at 17.) Section 14 contains the following remedies provision:

> The rights and remedies reserved to Buyer in this Contract shall be cumulative with, and additional to, all other or further remedies provided at law or in equity. Without limiting the foregoing, should any Products goods fail to conform to the warranties set forth in Section 7,[2] Buyer shall notify Seller and Seller shall, if requested by Buyer, reimburse Buyer for any incidental and consequential damages caused by such nonconforming goods, including, but not limited to, costs expenses and losses incurred by Buyer (a) in inspecting, sorting, repairing or replacing such nonconforming goods, (b) resulting from production interruptions, (c) conducting recall campaigns or other corrective service actions, and (d) claims for personal injury (including death) or property damage caused by such nonconforming Products.

[2] It appears to the Court that this should read Section 8, not Section 7, which is titled "Payment." (*See infra* at n.3; ECF No. 1-1 at 14-15.)

5

(*Id.* at 23.)

As an initial matter, the Terms provide under Section 21.10 that the Contract will be governed by and interpreted under South Carolina law. (*Id.* at 28.) "A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits, including the state's choice-of-law rules." *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 599-600 (4th Cir. 2004). "Choice of law clauses are generally honored in South Carolina." *Team IA, Inc. v. Lucas*, 717 S.E.2d 103, 108 (S.C. Ct. App. 2011). Accordingly, the Court respects the Contract's choice of law provision and considers the Contract in light of South Carolina law.

A federal court sitting in diversity should use the federal summary judgment standard involving contract interpretation and ambiguity. *See World-Wide Rights Ltd. P'ship v. Combe Inc.*, 955 F.2d 242, 245 (4th Cir. 1992); *Monsanto Co. v. ARE-108 Alexander Road, LLC*, 632 F. App'x 733, 736 (4th Cir. 2015); *Keystone Ne., Inc. v. Keystone Retaining Wall Sys., LLC*, 2015 WL 1186398, at *6 (D.S.C. March 16, 2015), *amended on reconsideration on other grounds*, 2015 WL 1400102 (D.S.C. March 25, 2015). "A court faces a conceptually difficult task in deciding whether to grant summary judgment on a matter of contract interpretation." *World-Wide Rights Ltd. P'ship*, 955 F.2d at 245. The court must first determine if the contract at issue is ambiguous. *Id*. If "the contract is unambiguous on the dispositive issue," it may grant summary judgment. *Id*. However, if the court determines that the contract is ambiguous, "it may yet examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if that evidence is, as a matter of law, dispositive of the interpretive issue, grant summary judgment on that basis." *Id.* (citing *Jaftex Corp. v. Aetna Cas. & Surety Co.*, 617

6

F.2d 1062, 1063 (4th Cir. 1980)). But if the review of the extrinsic evidence still "leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact." *Id.* "Therefore, summary judgment is appropriate when the contract in question is unambiguous or when an ambiguity can be definitively resolved by reference to extrinsic evidence." *Washington Metro. Area Transit Auth. v. Potomac Inv. Properties, Inc.*, 476 F.3d 231, 235 (4th Cir. 2007).

Sansera argues that it is entitled to summary judgment as to all claims because Section 9 of the Contract bars Metaldyne's recovery. (ECF No. 43.) According to Sansera, Metaldyne's entire case falls within the scope of Section 9 because "[t]he only damages Metaldyne seeks are a reimbursement for what it paid BMW to settle all potential claims BMW may have against Metaldyne that arise from allegedly defective shift forks." (ECF No. 43 at 7.) Its assertion as to the damages being sought by Metaldyne is based on Metaldyne's Rule 26(a)(1) disclosures and answer to Interrogatory No. 4, seeking a statement of damages sustained. (*Id.* at 7-9.) As to its disclosures, Metaldyne provided a "total damages amount," and the amount listed is the exact same amount it paid to BMW to resolve BMW's claims against it. (ECF No. 43-9 at 8-9.) As to its answer to Interrogatory No. 4, Metaldyne simply referred to its initial disclosures. (ECF No. 43-11 at 10-11.) Thus, Sansera contends that Metaldyne's claims fail as a matter of law because there is no dispute that Metaldyne did not secure Sansera's written consent before it settled with BMW, as required by the plain language of Section 9. (ECF No. 43 at 1.)

In stark contrast, Metaldyne asserts that its claims "do not sound in third-party indemnification for bodily injury, death, or property damage arising out of a Sansera

defective product, as is required under Section 9." (ECF No. 48 at 15.) Rather, it contends that its claims "arise out of [Sansera's] breach of warranty and breach of contract" under Section 8[3] and 14 of the Contract, as well as the South Carolina Uniform Commercial Code. (*Id.*) According to Metaldyne, Section 9 does not apply to its claims because the following three conditions precedent to trigger its application are not met here: (1) the assertion of a third-party claim; (2) a claim asserted against Metaldyne or its customer, BMW; and (3) a third-party claim related to bodily injury, death, or property damage. (*Id.* at 17.)

The Court has carefully considered the parties' arguments, the legal authorities cited, and the provisions of the Contract at issue. Neither party asserts, nor does the Court find, that the language of Section 9 is ambiguous or is susceptible to more than one interpretation. Instead, the dispute over Section 9's applicability centers on the parties' differing view of both the claims being asserted by Metaldyne and the damages being sought by Metaldyne. It is evident to the Court that Sansera views this case as asserting ***only*** a claim for indemnification and seeking ***only*** recovery of the settlement amount Metaldyne paid to BMW. While there is no dispute that Metaldyne does seek to recover the amount it paid to BMW, Metaldyne also asserts claims under Section 8 of the Contract (Product Warranties) and seeks damages under Section 14 of the Contract (the remedies provision). (ECF No. 48 at 18.) Indeed, the complaint plainly asserts more than indemnification claims against Sansera, and it specifically references Sections 8 and 14 of the Contract and seeks actual and consequential damages with regard to each cause of action. (ECF No. 1.)

---

[3] Section 8 is entitled "Product Warranties," and 8.1 outlines Sansera's warranties to Metaldyne. (*See* ECF No. 1-1 at 15.)

Under South Carolina law, the Court undertakes the interpretation of Section 9 as a matter of law. *Lee v. Univ. of S.C.*, 757 S.E.2d 394, 397 (S.C. 2014). Upon review, the Court agrees with Sansera that Section 9 applies to Metaldyne's indemnification claims, specifically, Metaldyne's fifth and sixth causes of action. In other words, as to Metaldyne's fifth and sixth causes of action, the Court finds that there is no dispute that BMW is a third-party to the Contract, that it asserted claims against "the Buyer," Metaldyne; and that BMW's claims against Metaldyne were for "property damage" to its motorcycles and "damages, losses, costs, and expenses" BMW incurred due to the "defective, non-conforming . . . shift fork pin component" in the transmission assemblies. (ECF No. 1 at 1.) While Metaldyne notes that "neither [it] nor BMW is a defendant," (ECF No. 48 at 15), the plain, unambiguous language of Section 9 does not require the filing of a lawsuit nor does it use the word "defendant." Rather, it states in more general terms that "Seller shall indemnify . . . Buyer against third-party claims asserted against Buyer." (ECF No. 1-1 at 16-17.) *See Lindsay v. Lindsay*, 491 S.E.2d 583, 589 (Ct. App.1997) ("The court must enforce an unambiguous contract according to its terms regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully.") Thus, the Court finds that Section 9 is applicable to Metaldyne's ***indemnification*** claims against Sansera.

Given this determination, the question becomes whether Metaldyne adhered to the requirements set forth in Section 9 to trigger Sansera's indemnification obligation to Metaldyne. Section 9 states:

> Buyer **will endeavor** to include Seller in settlement discussions where indemnity has been or will be sought from Seller, **and** Buyer **may not settle** or compromise any third-party claim that gives rise to an indemnification

claim **without Seller's prior written consent**, which consent shall not be unreasonably withheld, conditioned or delayed.

(ECF No. 1-1 at 17) (emphasis added.) Thus, according to the plain terms of Section 9, Metaldyne faced two requirements. Notably, while the first requirement only required Metaldyne to endeavor to include Seller in settlement discussions, the second requirement plainly required Buyer to obtain Seller's prior written consent before Buyer settled or compromised any third-party claim giving rise to an indemnification claim.

Here, there is no dispute that Metaldyne settled BMW's claims against it **without** first obtaining the prior written consent of Sansera. Metaldyne does not argue otherwise. Indeed, a review of its response in opposition reveals no discussion of requirement two. Rather, Metaldyne simply argues that it tried to include Sansera in the settlement discussions with BMW but that Sansera "opted not to participate in meaningful discussions" with it. (ECF No. 48 at Section B.) Section 9's requirements, however, are in the conjunctive, so even assuming without deciding that Metaldyne satisfied the first one, there is no genuine dispute of material fact as to Metaldyne's failure to satisfy the second one. Accordingly, the Court finds that Sansera is entitled to summary judgment on Metaldyne's fifth and sixth causes of action seeking due to Metaldyne's failure to first obtain Sansera's written consent as required by Section 9 of the Contract.

This does not end the Court's inquiry, however, because Metaldyne's complaint includes claims other than for indemnification. Also, as previously mentioned, in addition to Section 9, which speaks only to indemnification for third-party claims, Section 8 of the Contract contains certain warranties regarding non-confirming products, and it contains a cumulative, broadly worded remedies provision for breach of said warranties in Section 14. And the complaint plainly references these sections and seeks relief pursuant to

them. Additional principles of South Carolina contract interpretation dictate that contracts "will be interpreted so as to give effect to all of their provisions, if practical." *Reyhani v. Stone Creek Cove Condo. II Horizontal Prop. Regime*, 494 S.E.2d 465, 468 (Ct. App. 1997) (citing 17A Am. Jur. 2d Contracts § 385 (1991)). As such, "[i]t is fundamental that, in the construction of the language of a contract, it is proper to read together the different provisions therein dealing with the same subject matter, and where possible, all the language used should be given a reasonable meaning." *Bluffton Towne Ctr., LLC v. Gilleland-Prince*, 772 S.E.2d 882, 890 (Ct. App. 2015) (quoting *Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC*, 649 S.E.2d 494, 498-99 (Ct. App. 2007)). "In construing and determining the effect of a written contract, the intention of the parties and the meaning are gathered primarily from the contents of the writing itself, or, as otherwise stated, from the four corners of the instrument." *Silver v. Aabstract Pools & Spas, Inc.*, 658 S.E.2d 539, 542 (Ct. App. 2008) (quoting *McPherson v. J.E. Sirrine & Co.*, 33 S.E.2d 501, 509 (1945)).

Accordingly, after review, the Court declines to grant summary judgment in Sansera's favor on Metaldyne's remaining four claims: (1) breach of contract; (2) breach of express warranties; (3) breach of implied warranty of merchantability; and (4) breach of implied warranty of fitness for particular purpose. After a close review of the complaint and Metaldyne's response in opposition, it appears to the Court that Metaldyne has not abandoned its breach of contract and warranty claims and *is* seeking to recover consequential damages that may be available to it under Section 14, separate and apart from the settlement amount it paid to BMW. Thus, the Court is not persuaded by Sansera's argument that Section 14 governs no aspect of this case "[b]ecause Metaldyne

exclusively seeks to be indemnified for its settlement payment to BMW," and "is not seeking other remedies." (ECF No. 49 at 4-5.) Importantly, under Section 14, Metaldyne may be entitled to be "reimburse[d] [by Sansera] for any incidental and consequential damages caused by such nonconforming goods." (ECF No. 1-1 at 23.) This provision then provides examples of costs and expenses that the Buyer may be able to recoup, which Sansera argues were not incurred by Metaldyne. However, Sansera's argument ignores the "including, but not limited to language" preceding the examples, and the Court further notes that Section 21.8 under the Terms provides that "including" means "including without limitation." (ECF No. 1-1 at 27.) Even assuming the examples of costs and expenses were not incurred by Metaldyne, such a finding would not bar Metaldyne from seeking other consequential damages it may have suffered due to the breach of warranties. The Court must read together and give reasonable meaning to all provisions of the Contract, and at this juncture, where the parties have not had the benefit of full discovery as to potential damages under Section 14, the Court cannot find as a matter of law that Sansera is entitled to summary judgment on Metaldyne's first four causes of action.

## Conclusion

For the reasons set forth above, the Court **grants in part and denies in part** Sansera's motion for summary judgment. (ECF No. 43.) The Court **grants Sansera's motion as to Metaldyne's fifth and sixth causes of action and denies the motion as to Metaldyne's first, second, third, and fourth causes of action.**

IT IS SO ORDERED.

/s/ *Bruce Howe Hendricks*
United States District Judge

August 28, 2024

12

Charleston, South Carolina